IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

STEVEN M. RECHT, ALESHA
BAILEY, and STEPHEN P. NEW,

            Plaintiffs,

v.                                              Civil Action No. 5:20-CV-90
                                                           Judge Bailey

PATRICK MORRISSEY, in his
capacity as Attorney General of the
State of West Virginia,

            Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pending before this Court is Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law [Doc. 52]. The Motion has been fully briefed and is ripe for decision. Previously, the plaintiffs filed a motion for preliminary injunction which, after briefing and oral argument, this Court granted. *Recht v. Justice*, 2020 WL 6109430 (N.D. W.Va. June 26, 2020) (Bailey, J.).

This case surrounds the passage by the West Virginia Legislature of a set of statutes titled the "Prevention of Deceptive Lawsuit Advertising and Solicitation Practices Regarding the Use of Medications Act," codified as W.Va. Code § 47-28-1, *et seq.*, which Act took effect on June 5, 2020 ("Act").

The Act regulates permissible types of "legal advertisement," which it defines as "a solicitation for legal services regarding the use of medications through television, radio, newspaper or other periodical, outdoor display, or other written, electronic, or recorded

1

communications wherein the advertisement solicits clients or potential clients for legal services." W.Va. Code § 47-28-2(1). The definition appears to cover all forms of communication.

The Act further defines "solicit" to be "an offer to provide legal services regarding the use of medications by written, recorded, or electronic communication or by in-person, telephone, or real-time electronic contact." W.Va. Code § 47-28-2(4).

The Act then prohibits certain conduct with respect to legal advertisements and requires several disclosures. Violations are deemed unfair or deceptive acts or practices, id. at §47-28-3, and thus subject to an enforcement under West Virginia's Consumer Credit and Protection Act. See W.Va. Code § 46A-6-101, et seq.

The Act includes a prohibition against the use of the word "recall" in a "legal advertisement" in connection with a product unless the recall was ordered by a government agency or was the product of an agreement between the manufacturer and a government agency. Id. at § 47-28-3(a)(4).

It further prohibits legal advertisements from using the phrases "'consumer medical alert', 'health alert', 'consumer alert', 'public service health announcement', or substantially similar phrase suggesting to a reasonable recipient that the advertisement is offering professional, medical, or government agency advice about pharmaceuticals or medical devices rather than legal services." Id. at § 47-28-3(a)(2).

The Act further prohibits a "legal advertisement" from "display[ing] the logo of a federal or state government agency in a manner that suggests affiliation with the sponsorship of that agency." Id. at § 47-28-3(a)(3).

2

In addition, the Act requires a number of disclaimers for all "legal advertisements." Whether written or oral, the solicitation must include in clear and conspicuous presentation:

1. "[t]his is a paid advertisement for legal services," id. at § 47-28-3(a)(1);

2. the sponsor of the legal advertisement, id. at § 47-28-3(a)(5);

3. "the identity of the attorney or law firm that will represent clients, or how potential clients or cases will be referred to attorneys or law firms that will represent clients if the sponsor of the legal advertisement may not represent persons responding to the advertisement," id. at § 47-28-3(a)(6);

4. the words, "[d]o not stop taking a prescribed medication without first consulting with your doctor. Discontinuing a prescribed medication without your doctor's advice can result in injury or death," regardless of whether the "legal advertisement solicit[s] clients for legal services in connection with a prescription drug or medical device approved by the U.S. Food and Drug Administration," id. at § 47-28-3(b)(1); and,

5. a disclaimer that "the subject of the legal advertisement remains approved by the U.S. Food and Drug Administration, unless the product has been recalled or withdrawn," id. at § 47-28-3(b)(2).

## Discussion

As the United States Court of Appeals for the Fourth Circuit has held, "[t]he First Amendment guarantees that 'Congress shall make no law ... abridging the freedom of speech.' See U.S. Const. amend. I. That bedrock constitutional protection is made applicable to the states by the Fourteenth Amendment. See *Fusaro v. Cogan*, 930 F.3d

241, 248 (4th Cir. 2019). The threshold question before us is 'whether any protected First Amendment right is involved.' See *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 257 (4th Cir. 2005). If no such right is involved, our First Amendment inquiry ends. *Id.* If a protected First Amendment right is involved, however, we are obliged to then assess whether the governmental action in question infringes that right. See *Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606–07 (4th Cir. 2001). It is the obligation of the [p]laintiffs to prove that the Ordinance burdens protected speech. See *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015)." *Billups v. City of Charleston, S.C.*, 961 F.3d 673, 982, 2020 WL 3088108, at *5 (4th Cir. June 11, 2020).

In this case it is undisputed that the Act burdens protected speech. Inasmuch as the Act burdens speech, the next step is to determine the "applicable level of scrutiny — that is, intermediate or strict," which depends on whether the Act imposes content neutral or content based restrictions on speech. *Id.* at *7.

As the defendant admits, the Act is both content based and speaker based, which traditionally involves strict scrutiny. The defendant, however, contends that the fact that lawyer advertising is commercial speech waters down the protection to be applied.

In *Fusaro, supra,* the Fourth Circuit noted that the First Amendment:

has given rise to a complex array of legal protections for free expression, which the courts have flexibly applied in a variety of circumstances. Those precedents establish that the First Amendment protects speech along a spectrum, so that "[l]aws that impinge upon speech receive different levels of judicial scrutiny depending on the type of regulation and the justifications

4

and purposes underlying it." *See Stuart v. Camnitz*, 774 F.3d 238, 244 (4th Cir. 2014).

At one end of the applicable spectrum, "regulations that discriminate against speech based on its content are presumptively invalid" and are usually subject to strict scrutiny. *See Stuart*, 774 F.3d at 244 (internal quotation marks omitted). That is, such regulations must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118 (1991). "Laws that burden political speech" are also generally subject to strict scrutiny. *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). Further down the spectrum, "areas traditionally subject to government regulation, such as commercial speech and professional conduct, typically receive a lower level of review." *See Stuart*, 774 F.3d at 244 (internal quotation marks and alterations omitted). Within that spectrum, the federal courts have employed various multi-factor tests designed to achieve an "intermediate" level of review that can be sensibly applied in a range of contexts. *See, e.g., id.* at 249–50 (applying "heightened intermediate level of scrutiny" to statute that incorporated both content-based speech restriction and "regulation of the medical profession").

930 F.3d at 248–49.

In *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018), the Supreme Court held that laws which target speech based on its content "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). This stringent standard reflects the fundamental principle that governments have "'no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" (citing *Reed*, in turn quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).

By compelling individuals to speak a particular message, state mandated disclosures "alte[r] the content of [their] speech." *Becerra*, 138 S.Ct. at 2371 (citing *Riley v. National Federation of Blind of N. C., Inc.*, 487 U.S. 781, 795 (1988); *accord Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994); and *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 256 (1974)).

When a statute is designed to impose a specific content-based burden on protected expression, it follows that heightened scrutiny is warranted. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565 (2011). "The First Amendment requires heightened scrutiny whenever the government creates 'a regulation of speech because of disagreement with the message it conveys.'" *Id.* at 566 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

In *Sorrell*, the Court added that "[i]n the ordinary case it is all but dispositive to conclude that a law is content based and, in practice, viewpoint discriminatory." *Id.* at 571.

In *Billups*, the Fourth Circuit noted that speech is "'protected even [when] it is carried in a form that is "sold" for profit.' See *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976); see also *Sorrell*, 564 U.S. at 567 ('While the burdened speech results from an economic motive, so too does a great deal of vital expression.'); *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 441 (4th Cir. 1999) (explaining that 'profit motive on the speaker's part does not transform' protected noncommercial speech into less-protected commercial speech)." *Billups*, 961 F.3d 673, 683, 2020 WL 3088108, at *7.

The *Becerra* Court noted that "[s]ome Courts of Appeals have recognized 'professional speech' as a separate category of speech that is subject to different rules." 138 S.Ct. at 2371. They dismissed this distinction, stating:

But this Court has not recognized "professional speech" as a separate category of speech. Speech is not unprotected merely because it is uttered by "professionals." This Court has "been reluctant to mark off new categories of speech for diminished constitutional protection." *Denver Area Ed. Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727, 804 (1996) (KENNEDY, J., concurring in part, concurring in judgment in part, and dissenting in part). And it has been especially reluctant to "exemp[t] a category of speech from the normal prohibition on content-based restrictions." *United States v. Alvarez*, 567 U.S. 709, 722 (2012) (plurality opinion). This Court's precedents do not permit governments to impose content-based restrictions on speech without "'persuasive evidence ... of a

7

> long (if heretofore unrecognized) tradition'" to that effect. *Ibid*. (quoting
> *Brown v. Entertainment Merchants Assn.*, 564 U.S. 786, 792 (2011)).
>
> This Court's precedents do not recognize such a tradition for a category called "professional speech." This Court has afforded less protection for professional speech in two circumstances—neither of which turned on the fact that professionals were speaking. First, our precedents have applied more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their "commercial speech." *See, e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455–456 (1978). Second, under our precedents, States may regulate professional conduct, even though that conduct incidentally involves speech. *See, e.g., id.*, at 456, 98 S.Ct. 1912; *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992) (opinion of O'Connor, KENNEDY, and Souter, JJ.).

138 S.Ct. at 2371–72.

At this stage of the case, the defendant continues to contend that strict scrutiny is not appropriate. This Court finds this argument to be foreclosed in light of *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2347 (2020), in which the Court stated that "[u]nder the Court's precedents, a 'law that is content based' is 'subject to strict scrutiny.'" (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)). The *Barr* Court

8

added that "[a]bove 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" 140 S.Ct. at 2346 (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).[1]

Against this background, this Court will turn to an examination of the Act's specific provisions. The Act prohibits attorneys advertising with regard to pharmaceuticals or medical devices from (1) presenting an advertisement as a "health alert," "consumer alert" or the like; (2) displaying the logo of a government agency in a manner that suggests affiliation; or (3) using the word "recall" unless the recall was ordered by a government agency or was the product of an agreement between the manufacturer and a government agency. The statute further states that engaging in any of the above actions constitutes an unfair or deceptive practice.

At this point in the analysis, the burden is on the State of West Virginia to justify the restrictions. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2016) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991)"); *see also Doe v. Cooper*, 842 F.3d 833, 845 (4th Cir. 2016).

---

[1] While *Barr* is a fractured decision, the above quotes appear in Part II of the plurality opinion authored by Justice Kavanaugh and joined by the Chief Justice, Justice Alito, and Justice Thomas. In addition, in his concurrence in part, Justice Gorsuch states that "the TCPA's rule against cellphone robocalls is a content-based restriction that fails strict scrutiny." 140 S.Ct. at 2364.

9

In *Doe*, the Fourth Circuit stated that "'[i]f the regulation was adopted to burden disfavored viewpoints or modes of expression, a court applies strict scrutiny.' *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002). Conversely, if the statute 'was adopted for a purpose unrelated to the suppression of expression—e.g., to regulate conduct, or the time, place, and manner in which expression may take place—a court must apply a less demanding intermediate scrutiny.' *Id.* at 512–13; *see also Texas v. Johnson*, 491 U.S. 397, 406–07 (1989)." 842 F.3d at 845.

The *Doe* Court added that "[t]o pass intermediate scrutiny, a statute must 'materially advance[ ] an important or substantial [government] interest by redressing past harms or preventing future ones.' *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1082 (4th Cir. 2006). In addition, it must have the right 'fit.' That is, it cannot 'burden substantially more speech than is necessary to further the government's legitimate interests.' *Ward*, 491 U.S. at 799. '[I]ntermediate scrutiny places the burden of establishing the required fit squarely upon the government.' *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010)." *Id.* at 846.

Any restrictions must:

1. Be narrowly tailored to serve compelling state interests. *Becerra*, 138 S.Ct. at 2371;

2. Be justified without reference to the content of the regulated speech. *Billups*, 2020 WL 3088108, at *8;

3. Leave open ample, alternative channels for communication. *Id.*; *see also Ward v. Rock Against Racism*, 491 U.S. at 791;

4.        Have no less restrictive alternative that would serve the State's interest.

*Centro Tepeyac v. Montgomery County*, 722 F.2d 184, 190 (4th Cir. 2013) (en banc).

This Court will apply strict scrutiny, but notes that even were the Court to apply intermediate scrutiny, the above restrictions cannot pass muster. First, the State cannot legislate certain words or logos to be unfair or misleading any more than the Legislature can make a rock into a pillow by means of a statute.

While the State asserts that the need to avoid misleading advertising is the justification for the restrictions, the Act requires any advertisement to state that the ad is a paid advertisement for legal services and to identify the sponsor of the ad. The plaintiffs do not object to these requirements which are duplicative of the requirements of the Rules of Professional Conduct.

In addition, lawyers are, of course, governed by the West Virginia Rules of Professional Conduct. Rule 7.1 provides that "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

The Act only allows an advertisement to reference a recall if the recall is imposed by the Government. A voluntary recall may not be referenced. Accordingly, under the Act, a truthful description of a voluntary recall is deemed inherently deceptive and a violation. It is incongruous to consider a factually true and verifiable description of a recall as posing a potential to mislead consumers. *See Peel v. Att'y Registration & Disciplinary*

11

*Comm'n*, 496 U.S. 91, 106 (1990). *See also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502–03 ("bans that target truthful, nonmisleading commercial messages rarely protect consumers from such [commercial] harms."). The Attorney General has not shown how such a truthful statement could mislead.

The Act also bans a legal advertisement, properly labeled as such, using "consumer alert" or other similar phrases. In attempting to defend this provision, the State relies entirely on the existence of "multiple investigations and other reports on patient reactions and decisionmaking vis-à-vis such advertisements" that it claims make the use of these phrases misleading or deceptive. Those handful of investigations and reports, which include lobbying materials from an advocate for the legislation, are mostly found in footnotes and provide no basis as they are described by the State, to suggest that a ban on using consumer alerts or other similar phrases in legal advertising would prevent patients from limiting their use of prescribed drugs. As such, they cannot justify the State's position.

However, even if they did, the State offers no response at all to mandatory precedent cited by plaintiffs that deny the State authority to censor under the First Amendment based on a "fear that people would make bad decisions if given truthful information," and a state may not "achieve its policy objectives through the indirect means of restraining certain speech by certain speakers." *Sorrell*, 564 U.S. at 577 (citing *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002)). Instead, the State is obligated to address the problem it claims to have identified by "undertak[ing] public education campaigns . . . or, more generally, promoting consultations with physicians,"

12

*Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 190 (4th Cir. 2013), rather than suppressing that of others. This is even more true because the State's concern has nothing to do with protecting consumers from misleading or deceptive practices that relate to an offer of legal services.

It is important to note that in *Bates v. State Bar of Arizona*, 433 U.S. 350, 374–75 (1977), the Supreme Court observed that with respect to the professed justification of the ban on lawyer advertising, "the argument assumes that the public is not sophisticated enough to realize the limitations of advertising, and that the public is better kept in ignorance than trusted with correct but incomplete information. We suspect the argument rests on an underestimation of the public. In any event, we view as dubious any justification that is based on the benefits of public ignorance. *See Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. at 769–770."

In *Sorrell*, the Supreme Court states that "[t]he State may not burden the speech of others in order to tilt public debate in a preferred direction. 'The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish. Some of the ideas and information are vital, some of slight worth. But the general rule is that the speaker and the audience, not the government, assess the value of the information presented.'" 564 U.S. at 578–79 (quoting *Edenfield v. Fane*, 507 U.S. 761, 767 (1993)).

In addition, the State has failed to demonstrate that it has actually tried less restrictive alternatives, as required by *Billups*. In *Billups*, the Fourth Circuit stated that "[i]n *Reynolds*, our Court evaluated a Henrico County, Virginia ordinance that banned

13

panhandling and several other forms of solicitation on all county highways. In reversing the district court's decision that the ordinance did not run afoul of the First Amendment, we set forth the evidentiary standards that a governmental entity must meet to satisfy intermediate scrutiny. As it relates to the narrow-tailoring requirement, we made clear that 'intermediate scrutiny ... require[s] the government to present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary; argument unsupported by the evidence will not suffice to carry the government's burden.' *See Reynolds*, 779 F.3d at 229. And we further explained that 'the burden of proving narrow tailoring requires the [government] to **prove** that it actually **tried** other methods to address the problem.' *Id.* at 231." *Billups*, 2020 WL 3088108, at *10.

With respect to the disclosures required by the Act, it is clear that under certain circumstances disclosures may be required. "Under *Zauderer*, compelled disclosure of commercial speech complies with the First Amendment if the information in the disclosure is reasonably related to a substantial governmental interest and is purely factual and uncontroversial." *CTIA - The Wireless Assoc. v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019) (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)).

The Act's required disclosures also cannot stand. The requirement that the viewer or reader be instructed not to stop taking medication without doctor's advice runs counter to the message which the plaintiffs are striving to convey. In addition, such an instruction is similar to the requirement held to be invalid in *Centro Tepeyac*, which required that the public be encouraged to consult with a licensed health care provider. This disclosure is

14

more professional advice and opinion than purely factual and uncontroversial. It is not a "purely factual" statement to say: "Do not stop taking a prescribed medication without first consulting with your doctor." It is indisputably medical advice or direction and not a verifiable statement of fact that would be true in every instance.

Similarly, the requirement of informing the public that a product remains approved by the FDA is not reasonably related to the State's interest. For example, opioids remain approved by the FDA. There is little State interest in informing the public of that fact in light of the present opioid crisis. This Court believes that whether such advice should be given is the subject of controversy, making the disclosure inappropriate under *Zauderer* and *Becerra*.

## Conclusion

Based upon the foregoing, this Court finds that:

A.   Lawyer advertising is protected speech;

B.   The Act burdens protected speech;

C.   The Act implicates the First Amendment;

D.   The restrictions provided by the Act are content based and speaker based;

E.   The fact that the Act is content based and speaker based implicates strict scrutiny;

F.   While the State may impose reasonable restrictions to speech, in order to do so, the State must demonstrate a compelling state interest;

G.   The State has failed to demonstrate a compelling state interest to support the validity of the Act;

15

H.     Even if strict scrutiny were not appropriate, the State must still demonstrate a substantial government interest;

I.     Any restrictions must be narrowly tailored, justified without reference to the content of the regulated speech, leave open ample, alternative channels for communication, and have no less restrictive alternative that would serve the State's interest;

I.     The State has failed to demonstrate a substantial government interest sufficient to permit the infringement on the First Amendment.

Finally, contrary to the assertion of the plaintiffs, this Court finds the Act's provisions to be severable. See *North Carolina State Conf. of the NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016); *Barr, supra*.

Accordingly, this Court will **GRANT** Plaintiffs' Motion for Summary Judgment [**Doc. 52**]. The State of West Virginia is hereby permanently enjoined and prohibited from enforcing the provisions of W.Va. Code § 47-28-3(a)(2), (3), and (4), and (b).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: May 7, 2020.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT**

16